# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM STEFVON HURT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) Case No. 17-CV-005-JED-JFJ |
| JANET DOWLING, Warden, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court is William Stefvon Hurt's 28 U.S.C. § 2254 habeas corpus petition (Doc. 4). Hurt challenges his first-degree murder conviction in Tulsa County District Court, Case No. CF-2010-1963. For the reasons below, the Court will deny the petition.

**I. Background**

This case stems from a fatal shooting at Cheyenne Park in Tulsa. On the evening of May 16, 2010, Petitioner and his co-defendant, Jerlon Morgan, encountered victim Marcus Lewis at two locations. (Doc. 18-1 at 52-57; *see also* Doc. 18-2 at 11-16). Each time Morgan and the victim discussed fighting. (Doc. 18-2 at 11, 15). According to eyewitnesses Jarred Miller and Joseph Thomas, Petitioner and Morgan followed the victim to Cheyenne Park. (Doc. 18-1 at 111; *see also* Doc. 18-2 at 19). Petitioner was purportedly driving a white Taurus with a black front-end mask.[1] (Doc. 18-1 at 143; *see also* Doc. 18-2 at 19). The witnesses testified that Petitioner shot the victim after co-defendant Morgan and the victim engaged in a physical fight. (Doc. 18-1 at 58-64; 69-71; *see also* Doc. 18-2 at 22-27, 32-33).

The State charged Petitioner with first-degree murder in violation of OKLA. STAT. tit. 21, §

---

[1] At trial, the parties referred to the front-end mask as a "black bra."

701.7. (Doc. 17-4 at 1). His jury trial commenced on October 3, 2011. (Doc. 18-1). Defense counsel argued Petitioner's family had already sold the white Taurus, and that the eyewitnesses were lying. (Doc. 17-1 at 18-21). After a five-day trial, the jury convicted Petitioner of first-degree murder and recommended a sentence of life imprisonment. (Doc. 18-4 at 143). The state court sentenced him accordingly. (Doc. 18-6 at 4).

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). By a summary opinion entered May 17, 2013, the OCCA affirmed the conviction and sentence. (Doc. 17-4). Petitioner filed the instant § 2254 petition (Doc. 4) on February 7, 2017. He identifies three grounds of error:

(Ground 1): Insufficient evidence.

(Ground 2): Erroneous admission of opinion testimony.

(Ground 3): Prosecutorial misconduct.

(Ground 4): Ineffective assistance of trial counsel.

(Doc. 1 at 11, 14, 16, 20).

Respondent filed an answer (Doc. 17), along with relevant portions of the state court record (Doc. 18), on August 17, 2017. Respondent concedes, and the Court finds, that Petitioner exhausted his state remedies. *See* 28 U.S.C. §§ 2244(d)(1); 2254(b)(1)(A). Respondent initially argued the Petition was untimely, but the Court determined tolling applied. (Docs. 10, 14). The matter is fully briefed and ready for a merits review.

## II. Discussion

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA

where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[1] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely

---

[1] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter,* 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### A. Insufficient Evidence (Ground 1)

Petitioner first argues he was deprived of due process because the State's evidence is insufficient to support a first-degree murder conviction. (Doc. 4 at 11). He contends the two eyewitnesses lied to police on the night of the murder and told different, inconsistent stories at trial. (*Id.* at 11-12). Petitioner also points out that police never recovered the murder weapon or other physical evidence linking him to the crime. (*Id.*). The OCCA rejected Ground 1, finding "there was competent evidence to support the jury's verdict." (Doc. 17-4 at 2). The OCCA reasoned:

> [Petitioner] and his co-defendant were implicated in a murder by two people who knew him well, and who had no known motive for fabricating such a serious accusation. The fact that the complaining witnesses did not originally tell police the identity of the assailants (and changed their story the day after the murder) was the subject of vigorous attack by the defense at trial. On the other hand, these witnesses not only corroborated each other, but their testimony was corroborated independently in certain other respects. The credibility of witnesses, and the weight and consideration to be given to their testimony, are within the exclusive province of the trier of facts.

(*Id.*).

4

The legal standard applied by the OCCA is consistent with federal law. Under the Due Process Clause, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). As the Supreme Court explained:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Id.* The Court looks to state law to determine the substantive elements of the crime, "but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 566 U.S. at 655.

Petitioner challenges his murder conviction under OKLA. STAT. tit. 21, § 701.7. To obtain this conviction, the State had to show: (1) the unlawful death of a human; (2) caused by the defendant; and (3) with malice aforethought. *See* OKLA. CRIM. JURY INSTRUCTION NO. 4-61; OKLA. STAT. tit. 21, § 701.7(A). As the OCCA noted, the eyewitness testimony established each element of the crime. Miller testified that he knew Petitioner and his co-defendant for about ten years and

5

had no prior issue with them. (Doc. 18-1 at 48, 175). He further testified that Petitioner followed the victim to Cheyenne Park in a white Taurus. (*Id.* at 57). Petitioner's co-defendant, Morgan, "sucker punched" the victim through a window, which caused a fight. (*Id.* at 58-61). Miller recalled Petitioner pulling a gun on the victim after the victim grabbed Morgan's testicles. (*Id.* at 60-61). The victim then refused Morgan's attempt to shake hands and reconcile. (*Id.* at 67). Miller testified Petitioner shot the victim several times and ran back to the Taurus. (*Id.* at 68-70). Morgan purportedly directed Petitioner to "finish him," and Petitioner shot the victim two more times. (*Id.* at 71). Thomas, the second eyewitness, gave essentially the same testimony. (Doc. 18-2 at 21-33). Any discrepancies in their accounts - such as the direction the Taurus left the scene, whether the fight occurred against the Taurus or a nearby Lincoln, who initially suggesting lying to police, and whether the police obtained warrants - were not material enough to discount the testimony entirely.

Relief is also not warranted simply because the witnesses changed their initial story. Both men explained their hesitation to come forward, and defense counsel thoroughly questioned them on cross-examination. Miller testified he was very scared on the night of the shooting, but ultimately wanted to do what was right for the victim and his family. (Doc. 18-1 at 76, 79). Thomas testified he initially wanted an easy way out because "everyone kn[ew] everyone," but he later decided to tell the victim's family what happened. (Doc. 18-2 at 38, 43). The jury accepted these explanations, along with the other testimony at trial, which demonstrates Petitioner committed murder. Habeas courts faced "with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (quotations omitted).

The Court also notes that relief is not available based on the lack of physical evidence. Petitioner complains police never produced the murder weapon and or any physical evidence linking him to the crime. However, *Jackson* "does not require … [physical evidence such as] blood, DNA, or fingerprints … to sustain a criminal conviction." *Matthews v. Workman*, 577 F.3d 1175, 1185 (10th Cir. 2009). "[T]he focus of a *Jackson* inquiry is not on what evidence is missing from the record, but whether the evidence in the record, viewed in the light most favorable to the prosecution, is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* As discussed above, the trial evidence establishes each element of first-degree murder. The OCCA therefore appropriately applied federal law, and Ground 1 fails.

**B. Evidentiary Error (Ground 2)**

Petitioner next contends the state court erred in admitting irrelevant and speculative expert opinion testimony. (Doc. 4 at 14). The testimony concerned Corporal Coleman's use of a Cellebrite device, which retrieves data from cellular phones. According to Corporal Coleman, the victim received five calls from a phone belonging to co-defendant Morgan's aunt. Petitioner argues the Cellebrite data was unreliable under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1991). (Doc. 4 at 14; *see also* Doc. 17-1 at 31). He also contends the evidence did not definitively establish Morgan was using his aunt's phone, or that the calls occurred on any particular time or date. (*Id.*). The OCCA rejected Ground 2, finding the evidence "did have probative value [and] tended to corroborate the testimony of eyewitnesses." (Doc. 17-4 at 3). As to the *Daubert* challenge, the OCCA found "the data required no novel process for retrieval, and no specialized knowledge to interpret it." (*Id.*)

Generally, "federal habeas corpus relief does not lie to review state law questions about the

admissibility of evidence." *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001). "Absent a showing that the admission of the evidence violated a specific constitutional guarantee, a federal [habeas] court … will not disturb the … evidentiary ruling unless it was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Wilson v. Sirmons*, 536 F.3d 1064, 1101-02 (10th Cir. 2008). "*Daubert* does not set any specific constitutional floor on the admissibility of scientific evidence," and "the only relevant question is whether [Cellebrite evidence] rendered the trial fundamentally unfair." *Id.*

Having reviewed the record, the Court finds no fundamental unfairness. Numerous agencies use Cellebrite or similar devices to retrieve cell phone data, and there is no binding precedent indicating the technology is impermissible under *Daubert*. *See, e.g., United States v. Haymond,* 869 F.3d 1153, 1156 (10th Cir. 2017) (noting in passing that a probation officer conducted a forensic examination of defendant's phone using a Cellebrite device, and analyzing child pornography charges); *United States v. Schaffer,* 439 Fed. App'x 344, 347 (5th Cir. 2011) (noting "cell site analysis" is "neither untested nor unestablished"); *United States v. Seugasala,* 702 Fed. App'x 572, 575 (9th Cir. 2017) ("The officers who followed the software prompts from Cellebrite … to obtain data from electronic devices did not present testimony" that ran afoul of *Daubert*). The record also reflects Corporal Coleman was competent to testify regarding the Cellebrite data. He received specialized training, performed over a thousand Cellebrite examinations per year, and used the device to generate a report that could not be altered. (Doc. 18-3 at 54-58).

Moreover, the Court agrees the evidence was relevant. It corroborated the testimony of Miller and Thomas, who recalled that the victim received multiple harassing phone calls from

Morgan on the night of the murder. (Doc. 18-1 at 53; *see also* Doc. 18-2 at 18-19). Morgan's aunt confirmed the number was traceable to one of her two cell phones, and that she had did not know the victim. (Doc. 18-3 at 88-89). On this record, the Court cannot disturb the OCCA's ruling regarding Ground 2.

### C. Prosecutorial Misconduct (Ground 3)

In Ground 3, Petitioner contends the prosecutor broke his promise not to challenge the credibility of a defense theory. (Doc. 4 at 16). Petitioner maintained his family sold the white Taurus before the victim was killed, and Petitioner therefore could not have been involved in the shooting. (Doc. 17-1 at 33). The prosecutor spoke to Petitioner's family members as well as the purported buyer, who indicated they would testify for the defense. (*Id.* at 33-34). An intern for the prosecutor also contacted the notary listed on the Bill of Sale, who described the notary process but stated she could not recall the specific transaction. (*Id.*). At a bench conference during trial, the prosecutor told the judge:

> I don't dispute these witnesses will say the car was sold and that when we followed up with them, that's what they told us. No, I wouldn't dispute that at all.

(Doc. 18-2 at 216). Petitioner construed this statement to mean that the prosecutor would not dispute that the car was sold before the murder. (Doc. 4 at 16-17; *see also* Doc. 17-1 at 34). He challenges the prosecutor's cross-examination and closing argument, which probed inconsistencies among the witnesses concerning the details of the alleged car sale. (*Id.*).

The OCCA rejected Petitioner's argument, explaining:

> [Petitioner] confuses the act of knowingly presenting false or misleading evidence with the adversarial testing of witness credibility. … The prosecutor was not required to accept the credibility of the defense theory, no matter how many witnesses might testify to it, and regardless of whether another person – not called by the defense – could conceivably have testified to similar effect. Counsel are entitled to liberal freedom of speech in arguing

competing inferences from the evidence presented.

(Doc. 17-4 at 3-4).

Having reviewed the record, the Court agrees. Relief is only available under § 2254 if the prosecutor's "remarks … so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885 (10th Cir. 2019) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Here, the prosecutor never accepted Petitioner's defense theory, and there was nothing unfair about the cross-examination. Petitioner presented testimony from his mother, father, and sisters, who stated they sold the white Taurus about eight weeks before the shooting. (Doc. 18-3 at 118-119; 164-167; 180-183; 199-204). Petitioner also presented a Bill of Sale, which his mother allegedly completed. (*Id.* at 120; *see also* Doc. 18-5 at 79). The prosecutor cross-examined Petitioner's mother about the transaction, including the location of the notary, the buyer, and the purchase price. (Doc. 18-3 at 131-136). He also elicited conflicting testimony from Petitioner's sisters and father about the date of the sale; whether the family knew the buyer; and whether the car was running when it sold. (*Id.* at 164-167; 180-183; 199-204). A prosecutor is permitted to expose witness bias and test their ability to recall details so that a jury may judge credibility. *See United States v. Baldridge,* 559 F.3d 1126, 1135 (10th Cir. 2009). The OCCA's finding of no misconduct is therefore consistent with federal law. Habeas relief is unavailable on Ground 3.

**D. Ineffective Assistance of Counsel (Ground 4)**

Petitioner finally argues that trial counsel was ineffective for failing to call the Notary Public who purportedly notarized the Bill of Sale. (Doc. 4 at 20). He contends the testimony would have changed the outcome at trial because the jury asked: "Is it a law that a notary public has to

provide a date when they stamp a document?" (Doc. 18-5 at 84).[2] The OCCA rejected this claim under the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). (Doc. 17-4 at 4). Under *Strickland*, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. 466 U.S. at 687. To satisfy the second prong, the "defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Standing alone, the *Strickland* standard is "highly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009). Under § 2254(d)(1), this Court's review of whether the OCCA unreasonably applied *Strickland* is "doubly deferential." *Id.* at 123.

Applying double deference, the OCCA ruling is not unreasonable. As the OCCA pointed out, the notary's affidavit reflects that she has no independent recollection of the sale in question. (Doc. 17-4 at 4, n. 3; *see also* Doc. 17-2 at 7). Defense counsel also thoroughly developed the sale theory, calling four witnesses who testified the car was sold before the shooting. The jury elected to believe the State's eyewitnesses, who testified they saw Petitioner driving the Taurus on the night of the shooting. On this record, the Court cannot disturb the OCCA's finding that the omitted testimony "would not have materially added to the defense theory." (Doc. 17-4 at 4). The OCCA properly applied *Strickland,* and Ground 4 fails.

Based on the foregoing, the Court concludes Petitioner's conviction does not violate federal law. 28 U.S.C. § 2254(a). The Petition is therefore denied.

---

[2] The source of the jury's confusion is unclear since the Bill of Sale (Doc. 18-5 at 79) was admitted and includes a date above the Notary's signature. In response to the question, the state court directed them back to the evidence and their instructions. (*Id*).

### III. Certificate of Appealability

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons discussed above, Petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Doc. 4) is denied.

2. A certificate of appealability is denied.

3. A separate judgment will be entered herewith.

ORDERED this 30th day of December, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT